UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KAREN FENN, on behalf of herself and those similarly situated,<br><br>                  Plaintiff,<br>   v.<br><br>HEWLETT-PACKARD COMPANY,<br><br>                  Defendant. | Case No. 1:11-cv-00244-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it plaintiff's Renewed Motion for Conditional Certification of an FLSA Collective Action (Dkt. No. 52). Having reviewed the briefing submitted by the parties, the Court has determined oral argument is unnecessary. For the reasons explained below, the Court will grant the motion in part, and deny it in part. More specifically, the Court will authorize plaintiff to notify certain HP employees of this action, but will narrow the proposed class period.

## BACKGROUND

Plaintiff Karen Fenn alleges that she and other past and present customer service representatives at Hewlett-Packard (HP) were not paid for all hours worked beyond the forty hours per week. In a nutshell, Fenn complains that HP required customer service representatives to arrive early and leave late so they could load and shut down computer

applications.

Fenn originally sought to certify a nationwide class of HP customer service representatives.  The Court denied that motion without prejudice, however, and granted HP's request to conduct limited discovery.  At the conclusion of this discovery, plaintiff renewed her motion to certify, although she significantly limited the proposed class.  Fenn now seeks to certify a class limited to customer service representatives who worked in HP's Boise call center during the last three years.

## ANALYSIS

The Court begins by correcting a misconception.  HP believes the Court should construe Fenn's renewed motion as a motion for reconsideration under Federal Rule of Civil Procedure 59.  *See Opp.,* Dkt. 53, at 8.  The Court, however, had no intention of forcing Fenn into the realm of a Rule 59 motion when it denied her first certification motion without prejudice.  The standards applicable to the first motion apply here.

### 1. The Standard

The litigants are familiar with the standard governing FLSA certification motions, which the Court articulated in an earlier order.  *See Dec. 12, 2011 Order,* Dkt. 42, at 1-3.  The Court will not restate that entire standard here, although it bears repeating that the Court's job at this point is simply to decide whether the potential class should be given notice of the action.  Justifying such a notice is relatively easy for plaintiff.  She merely has to show "some identifiable factual or legal nexus" that "binds together the various

claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Wertheim v. Arizona,* 1993 WL 603552, at *1 (D. Ariz. Sept. 30, 1993).

The Court will also bear in mind the following, more specific guideposts in deciding this motion:

(1) A plaintiff need not submit a large number of declarations or affidavits to make the requisite factual showing. A handful of declarations may suffice.

(2) The fact that a defendant submits competing declarations will not as a general rule preclude conditional certification.

(3) The fact that other potential class members have not affirmatively stated a desire to opt in does not preclude conditional certification.

*Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 838 (N.D. Cal. 2010) (internal citations omitted).

## 2. The Evidence

The first guidepost listed above – the strength of Fenn's evidentiary showing – is the crux of this motion. Typically, the Court will see at least a few declarations supporting an FLSA certification motion. Fenn, however, relies almost exclusively on her own deposition testimony. No other customer service representative has come forward.[1] Nevertheless, Fenn is a relatively long-term employee. She worked as a

---

[1] Fenn submitted declarations from customer service representatives with her first motion, but the Court granted HP's motion to strike these declarations. The Court gave Fenn the opportunity to re-submit the declarations but she declined to do so. Further, the declarations would not be particularly relevant to this renewed motion. Only one of the declarants, John

customer service representative for over four years – from July 2005 through April 2010.[2] Additionally, she points to testimony from an HP supervisor, Lori Stanfield. Stanfield acknowledged that HP customer service representatives working in the Boise call center may have been working without pay at one point.

As for her own testimony, Fenn says that up until the last six months of her employment, all her supervisors instructed her to boot up and shut down her computer off the clock. Fenn worked on four different teams and said this practice was the same for each team. She also testified about two separate training sessions, one in 2005 and the other in 2008, where trainers specifically told employees they would need to come in 15 minutes early to boot up their computers. Fenn recalled one trainer specifically saying, "That's the industry standard. No call center will pay you for booting up." *See Fenn Dep.*, at 88:11-20.

In addition to knowing about practices applicable to the four teams she worked on, Fenn has some knowledge regarding two other teams – the Public Sector Direct team and the Everest team. The Public Sector Direct team was located next to hers, and she "often" heard that supervisor instruct his team not to log onto the phone system until they were ready to make calls. *See id.* 81:16 to 81:5. (Although HP employees use a different

---

Shaul, worked in the Boise call center, but he stopped working there in July 2008. The proposed class period would not reach that far back.

[2]Fenn began her employment with EDS on July 18, 2005. *Fenn Dep.* at 25:7-9. HP merged with EDS in August 2008. *See id.* at 25:19-21. Fenn's last day with HP was April 10, 2010. *Id.* at 25:25 to 26:8.

**MEMORANDUM DECISION AND ORDER - 4**

computer system for submitting time sheets, logging into the phone system is how HP customer service representatives track their time on the job.)  Also, Fenn job shadowed with the Everest team at one point, and said that Everest team members told her they could not log in until they were ready to take calls. *Id.* at 84:15 to 85:6.

Otherwise, Fenn does not specifically know what supervisors told their teams. *See id.* 81:12-15.  Instead, she speaks in generalities, observing, for example, that it was "common knowledge throughout the building that those were the rules we worked under, and we heard it discussed often enough that it was well known that that was what would happen; and I would be very familiar with those rules for all the groups in that building except for the government group." *See id.* 93:22 to 94:9; *see also id.* at 95:4-8 ("You have to understand that these groups were in one very large room.  We went back and forth.  We talked to each other.  It was very well known that that was the rule that we worked under regardless of who your supervisor was.").

Turning to other evidence, Fenn points to Lori Stanfield's testimony.  Apparently, several Boise call-center supervisors – including Fenn's supervisor – report to Stanfield.  In the fall of 2008, Stanfield's superior specifically told her to instruct Boise supervisors to make sure that customer service representatives were logging into the phone system before booting up their computers.  Stanfield complied, sending out an email to her team, clarifying that "Employees need to be paid for the time they spend booting up, reading emails, signing up for OT, and shutting down." *Sept. 3, 2008 email from Lori Stanfield to*

*"BoiseHPSups",* Dkt. 37-30, at 6.  Stanfield says she does not know specifically what prompted her supervisor to clarify this issue, but she assumed that Boise customer service representatives may have been working off the clock.

HP insists that Fenn's "anecdotal evidence" is insufficient and points out that Fenn does not have first-hand knowledge of what numerous supervisors or trainers told other customer service representatives – even in the Boise call center.  Indeed, some customer service representatives did not even work in the same building and Fenn did not have access to these buildings.  HP also observes that, as a "phone agent," Fenn's duties differ from many other customer service representatives that would be included in the class.

Considering all this evidence and the parties' related arguments, the Court finds that Fenn has satisfied her minimal burden of showing there are similarly situated class members who would benefit from receiving notice of this action.  The Court will exclude employees who did not work in Fenn's building, as Fenn has not provided sufficient evidence linking her experiences or claims with employees who did not work in the same building.  Similarly, the Court will exclude all customer service representatives who worked exclusively for the "government group," as Fenn concedes she has no knowledge of the practices applicable to this group.

Otherwise, Fenn has made the modest factual showing necessary to certify a class.  The Court does not find that the differing duties performed by customer service representatives weighs against certification.  Fenn's central allegation is that customer

service representatives – regardless of type – had to load particular software applications before beginning their substantive work and being paid. The evidence supports this assertion.

As for the countervailing evidence HP has submitted – and this deals with the second guidepost listed above – the Court finds this evidence unpersuasive to the extent it simply creates a "'he-said-she-said' situation." For example, HP employee Christie Doty worked in the same group as Fenn and stated that no supervisor ever instructed her to work without pay. Doty also says that different teams had different practices regarding when customer service representatives log into the phone system and begin their work day, contrary to Fenn's testimony that all customer service representatives in her building worked under the same rules. At this stage of the proceedings, the Court does not weigh this sort of competing evidence. *See Escobar v. Whiteside Constr. Corp.*, 2008 WL 391575 (N.D. Cal. Aug. 21, 2008) ("So it is a he-said-she-said situation. . . . It may be true that the evidence will later negate plaintiffs' claims, but this order will not deny conditional certification at this stage of the proceedings.").

Finally, the Court will not deny certification because Fenn has failed to show that others are interested in joining the suit. Until potential class members know about the lawsuit, it is difficult to know whether they would be interested in joining. Thus, the Court agrees that "requiring named plaintiffs to proffer evidence that others desire to opt in before sending notice to potential class members puts the named plaintiff in the

MEMORANDUM DECISION AND ORDER - 7

'ultimate chicken and egg dilemma.'" *Davis v. Westgate Planet Hollywood Las Vegas, LLC,* 2009 WL 102735, at *12 (D. Nev. Jan. 12. 2009) (citing *Kinney Shoe Corp. v. Vorhes* , 564 F.2d 859 (9th Cir. 1977), *abrogated on other grounds, Hoffmann-La Roche Ins. v. Sperling,* 496 U.S. 165 (1989)).

The Court is aware that the Eleventh Circuit requires "evidence . . . showing that there are a number of employees . . . who are 'similarly situated' *and who may desire to opt in*.'" *Dybach v. Fla. Dept. of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991) (emphasis added).  HP indirectly relies on Eleventh Circuit authority by citing a California federal district court decision that adopted the Eleventh Circuit's position.  *See Opp.*, Dkt. 53, at 19 (citing *Silverman v. SmithKline Beecham*, 2007 WL 6344674 , at *2 (C.D. Cal. Oct. 15, 2007)).  The Ninth Circuit, however, has never adopted this standard, and this Court declines to do so.  *Accord Carillo v. Schneider Logistics,* 2012 WL 556309, at *11 (C.D. Cal. Jan. 31, 2012) (citing cases).

Having determined that notice is appropriate, the Court now turns to the appropriate scope of notice.  The Court already narrowed the class by excluding customer service representatives who did not work in Fenn's building, and those who worked exclusively in the "government group."  The Court will further narrow the class by limiting the class to an approximate 14-month period, rather than the three-year period plaintiff requests.

**3.   The Proposed Class Period**

The Court will define the class period such that it reaches back to August 2, 2008 and then forward to October 10, 2009.

The dates of this class period are somewhat unusual and thus require some explanation.  First, regarding the October 10, 2009 date, Fenn admitted that during the last six months of her employment (October 10, 2009 through April 10, 2010),[3] she was paid for the time it took to load her computer software applications.  Thus, she does not allege any violations during November or December 2009, or at any time in 2010, 2011, or 2012.  The Court agrees that it makes sense to limit the notice period to the time in which Fenn alleges that violations occurred.  *Cf. Williams v. Trendwest Resorts, Inc.*, 2007 WL 3343077 (D. Nev. Oct. 30, 2007) (evidence of activities outside the statute of limitations did not support certification under FLSA).  Further, HP raised this point in its opposition, *see Opp.*, Dkt. 53, at 12-13, and Fenn did not specifically reply.

As for the beginning point of the class period (August 2, 2008), the Court would typically define this date by reaching back three years from the date of its order granting the certification motion (in this case, back to May 17, 2009).  But here, Fenn originally

---

[3] Fenn's last day of employment with HP was April 10, 2010.  She was informed that she would be laid off in February 2010, and was paid for 60 additional days in which she did not work.  *See Fenn Dep.* at 25:25 to 26:23.  Fenn's testimony regarding when HP began paying her for booting up and shutting down her computer is not so precise.  She simply mentioned that this occurred during her "last six months" with the company. *See id.* at 102:16 to 103:1; 106:2-9; 110:7 to 21; 113:14-19.  The Court will err in plaintiff's favor on this point, and reach back from April 2010, rather than from February 2010.

filed her certification motion back in August 2011.  *See Aug. 2, 2011 Motion to Certify Class,* Dkt. 21.  The Court denied this motion without prejudice, indicating that the parties could conduct limited discovery relating to certification.  *See Dec. 12, 2011 Order,* Dkt. 42 (denying motion for certification without prejudice to allow parties to conduct limited discovery).  Under these circumstances, the Court finds it just to toll the statute of limitations from August 2, 2011 (the date plaintiff filed her original certification motion) to date to the date the Court decides this motion.  *See, e.g., Partlow v. Jewish Orphans' Home of Southern Cal., Inc.*, 645 F.2d 757, 760–61 (9th Cir. 1981) (equitable tolling proper where plaintiffs were without fault and "practical effect of not tolling the statute would be to bar forever any claim" the employees had against defendant), *abrogated on other grounds by Hoffman–LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2007 WL 707475 at *8 (N.D. Cal. Mar.6, 2007) (equitably tolling FLSA statute of limitations because of factors outside plaintiffs' control, including litigation, arbitration and settlement of related action).

Given that the Court has tolled the statute of limitations for this limited period, a corresponding change to the class period makes sense.  In other words, the proposed class period will reach back to August 2011, rather than May 2009.

More generally, the Court has some concerns that limiting the class to a shorter-than-usual time period weighs against certification.  But it is possible that there could be a few hundred potential class members.  Over 400 employees worked as HP customer

**MEMORANDUM DECISION AND ORDER - 10**

service representatives during July 2011, and HP has not indicated that there were significantly fewer customer service representatives in 2008 or 2009.

**4. Contract Workers**

Finally, the Court will include contract workers in the class of employees who will receive notice of this lawsuit. When the Court denied Fenn's first certification motion, it indicated that any renewed motion should explain "the distinction between CSRs [customer service representatives] who worked directly for HP and those who worked for contractors, and whether this distinction affects the rights of potential class members." *Dec. 12, 2011 Order,* Dkt. 42, at 6-7.

HP argues that there is a significant factual distinction between direct employees and contract workers because the contract workers – unlike the direct employees – will have to establish that HP was a joint employer. *See generally Falk v. Brennan*, 414 U.S. 190, 195 (1973) (two or more employers may jointly employ someone for purposes of the FLSA). After further briefing, the Court concludes that this distinction, standing alone, is not enough to justify excluding these workers from the class at this stage. As the Court now views this case, the joint employer issue is a distinct one that can be efficiently handled within this lawsuit. HP has cited cases addressing the joint employer issue, but none involve conditional certification motions.

Further, Fenn's testimony is sufficient to make the requisite modest factual showing that contract workers and direct hires are similarly situated in terms of being

asked to perform work without pay. She testified that both types of workers received the same training regarding booting up and shutting down their computers. *See Fenn Dep.*, 126:13 to 129:14. HP may be able to negate this showing later, but at this point Fenn has put forward sufficient evidence to justify notifying contract workers and direct hires.

## ORDER

**IT IS ORDERED** that Fenn's Motion for Conditional Certification of FLSA Collective Action (Dkt. 52) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that the action shall proceed under conditional certification as follows:

(1) Notice is authorized to all persons who were employed by HP as customer service representatives during August 2, 2008 through and including October 10, 2009.

(2) Within fifteen days of days of this Order, defendant shall produce a computer readable list of all employees, whether direct hires or contract workers, who also meet the following criteria:

    (a) the employee worked as a customer service representative at HP's Boise call center at any point between August 2, 2008 and October 10, 2009; and

    (b) the employee worked in the same building where Karen Fenn worked, excluding customer service representatives who worked only in the "government group."

The list shall include the full name for each individual, the last known mailing address and the dates of employment.

(3) Plaintiff's counsel is authorized to mail notice and opt-in forms to all potential class members. Plaintiff shall modify the proposed notice

consistent with the terms of this Order.

(4) Putative class members will have sixty days from the date notice is mailed to return their consent forms.



DATED:  **May 17, 2012**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 13**